```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| KEVIN NICKLES,<br><br>                    Plaintiff,<br><br>     v.<br><br> WARDEN E. TAYLOR,<br><br>                    Defendant. | Civil Action<br>No. 09-313 (JBS/JS)<br>No. 09-557 (NLH/JS)<br>No. 09-679 (JBS/JS)<br>No. 09-952 (NLH/AMD)<br><br>**OPINION** |

APPEARANCES:

Mr. Kevin Nickles
633247/476040c
Bayside State Prison
4293 Route 47
P.O. Box F-1
Leesburg, NJ 08327
     Plaintiff appearing pro se

Catherine Binowski, Esq.
Office of Camden County Counsel
520 Market Street
14th Floor Courthouse
Camden, NJ 08102
     Counsel for Defendant Warden E. Taylor.

**SIMANDLE**, District Judge:

     This matter is presently before the Court on a motion for summary judgment submitted by Defendant E. Taylor, Warden at Camden County Correctional Facility ("CCCF") [Docket Item 31]. Defendant asks the Court to find that Plaintiff Kevin Nickels has failed to show that he was subjected to conditions that violated the Eighth Amendment while incarcerated at CCCF.  Plaintiff opposes, but submits no admissible evidence in support of his

opposition, and instead requests an evidentiary hearing to resolve his claims.  For the reasons expressed below, the Court finds that Plaintiff has not offered evidence sufficient to show an Eighth Amendment violation and will grant summary judgment in favor of Defendant.

I.   BACKGROUND

From January 23, 2009 through March 3, 2009, Plaintiff filed four separate lawsuits pursuant to 42 U.S.C. § 1983 alleging that Defendant had violated his rights under the Eighth Amendment while he was housed at CCCF.[1]  Those complaints, which have since been consolidated before the undersigned, allege that his cell block did not have any heat and that he is taking pain medications due to his discomfort from sleeping on the floor, (Compl. 09-313), that the water had been off for a week due to a burst pipe and the toilet would not flush, (Compl. 09-557), and that four inmates sleep in one cell where waste backs up from the drains three feet from where the inmates sleep, (Compls. 09-679 & 09-952).

Plaintiff is no longer confined at CCCF, so injunctive

---

[1] Both Plaintiff and Defendant present this case as one governed by the Eighth Amendment and the Court will assume, there being no evidence to the contrary, that Plaintiff was being held as a convicted criminal for the time period relevant to his claims.  See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Eighth Amendment is not applicable in cases involving pretrial detainees because the detainees "are not yet at a stage of the criminal process where they can be punished because they have not as yet been convicted of anything").

relief is unavailable to him and his remaining claims are for monetary damages under 42 U.S.C. § 1983. Federal law limits claims seeking monetary damages for personal injuries arising from conditions of confinement to only those cases where a physical injury has occurred, <u>see</u> 42 U.S.C. § 1997e(e). Accordingly, Mr. Nickels must show that he has suffered physical injury caused by the allegedly unconstitutional conditions of confinement at CCCF.

On December 15, 2009, Defendant submitted the instant motion for summary judgment, which included a copy of Plaintiff's answers to interrogatories and an affidavit from Lieutenant Karen Taylor [Docket Item 31]. Plaintiff opposed by way of a short letter, in which he states that there was black mold in the shower at CCCF and that he tested positive for Hepatitis C, but was not treated by CCCF staff [Docket Item 32]. Plaintiff did not submit any evidence with his opposition. Instead, several months after briefing on this summary judgment motion was complete, Plaintiff submitted a letter requesting an evidentiary hearing in which he would "prove the facts of this case" [Docket Item 33].

As discussed further below, Plaintiff, as the party opposing the Defendant's motion for summary judgment, must submit to the Court evidence by way of affidavits and discovery materials (such as documents that would be admissible in evidence) to support

Plaintiff's showing that such facts are sufficient to enable a reasonable jury to find in his favor at trial.  See Rules 56(c)(2) & 56(e)(2), Fed. R. Civ. P.  Therefore, for the purposes of the present summary judgment motion, the Court must rely on Plaintiff's answers to Defendant's interrogatories, as well as a submission Plaintiff entitled "pre-trial memorandum," filed prior to this motion practice.  Both documents are scattered with largely unelaborated claims regarding the conditions of Plaintiff's confinement at CCCF.  For ease of analysis, the Court will categorize Plaintiff's complaints as follows: (1) conditions within the cell; (2) water; (3) shower; (4) food; (5) health care; (6) fire hazards and (7) inadequate rehabilitative programs.

With regards to his cell conditions, Plaintiff states in his response to interrogatories: "Defendants [] overlooked the fact that (inmates) and plaintiff was sleeping on the floor with no heat for more than two month[s];" and "I was placed in an unsafe unliveable envir[on]ment dirty water, four men in a 8x10 cell the shower is a meeting grounds for mdd, boils etc. . ."  (Def. Exh. A ¶ 5(A).)  With his pre-trial memorandum, Plaintiff submitted a letter from an inmate who reports that CCCF was housing four to five people in cells meant to house one person, and that the inmate was "sleeping on the cold dirty floor."  (Pre-Trial Memorandum at 25.)

4

With regards to the water, Plaintiff wrote: "We are being denied an adequate amount of clean drinking water on a daily bas[i]s." (Def. Exh. A ¶ 5(A).)  He also refers generally to "dirty water." (Id.)

With regards to the shower, Plaintiff states in his response to Defendant's interrogatories that "There was black mold in the shower and it was hard to get in a dirty shower so I could get clean.  Bleach was not getting it done." (Id. ¶ 1(A).) Plaintiff submitted letters from other inmates with his pre-trial memorandum that describe the shower as "nasty" and filled with mold.  (Pre-Trial Memorandum at 22-23, 26.)

With regard to the food, Plaintiff states that "food was bad due to it not being kept at the right temperatures," so that it gave Plaintiff stomach pain, went to the bathroom "six or seven times a day," and caused blood in his stool.  (Def. Exh. A ¶ 2(A).)  Plaintiff's pre-trial memorandum includes several grievances to CCCF complaining about his need for Halal food and the fact that the kitchen served only eggs every day for breakfast.  (Pre-Trial Memorandum at 6-10.)   Plaintiff also included an newspaper article describing food at CCCF that was improperly covered and kept at an inappropriate temperature. (Id. at 16.)

With regard to health care, Plaintiff states that he tested positive for Hepatitis C while at CCCF, but the condition was

5

left untreated.  (Def. Exh. A ¶ 2(A).)

With regard to fire hazards, Plaintiff reports: "The Block that I was housed on was [a] fire trap and there [was] no way out of the block if a fire was to br[eak] out there[']s one way in and one way out no fire outlet.  On the A Blocks of the jails you (inmates) can get to a door to a stair well C, B can get to A Block by door on th[eir] Blocks b[ut] not D Block.  D Block is a fire trap."  (Id. ¶ 5(A).)

Plaintiff also complains that "programs" (the Court assumes he is referring to treatment programs) have been shortened.  (Id. ¶ 1(C).)

In addition to Plaintiff's answers to Defendant's interrogatories, and Plaintiff's pre-trial memorandum, the record includes the certification from CCCF Lieutenant Karen Taylor.  (Def. Exh. B.)  Lieutenant Taylor reports that to the extent Plaintiff was required to sleep on the floor rather than in a bunk, he was given a mattress, and further that "[a]t all times, there was drinking water, the inmates could take showers and they were permitted to leave the cells to use the bathroom facilities."  (Id. ¶¶ 2-3.)

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and

6

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted). Therefore, a summary judgment opponent "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005); see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.").

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 323.

### B.   Eighth Amendment Claim

Defendant asserts that the evidence of record, even taking Plaintiff's statements to be true, is insufficient to show a constitutional deprivation under the Eighth Amendment.  The Court agrees, finding that Plaintiff's conclusory assertions regarding the conditions of his confinement at CCCF do not establish that Plaintiff lacked "the minimal civilized measure of life's necessities."  Consequently, the Court will grant summary judgment to Defendant on Plaintiff's Eighth Amendment claim.

"The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency."  Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C. § 1997e(a).  A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  In order to establish a claim under the

8

Eighth Amendment based on conditions of confinement, the Supreme Court has set forth a two-part test with objective ("Was the deprivation sufficiently serious?") and subjective ("Did the officials act with a sufficiently culpable state of mind?") components.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective element demands that the prisoner demonstrate "that prison officials acted or failed to act with deliberate indifference."  Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

With regards to the objective prong, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 347.  "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  Id.  Conditions of confinement for convicted criminals are unconstitutional only when they "deprive inmates of the minimal civilized measure of life's necessities."  Id.  Thus, the deprivation is actionable where it poses a "substantial risk of serious harm" to the inmate.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  Wilson, 501

U.S. at 304.

Of the various conditions alluded to in Plaintiff's answer to interrogatories and his pre-trial memorandum, most are not raised or challenged in any of the four complaints Plaintiff has brought against Warden Taylor (all four complaints identify one particular condition -- cell arrangements or water supply -- which Plaintiff intended to challenge by way of that complaint). As such, he did not provide Defendant with the necessary notice under Rule 8(a), Fed. R. Civ. P., of other grounds for his Eighth Amendment claim. See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (Rule 8 requires a short and plain statement of the claim "in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'") (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Nor was it sufficient to present those claims in opposition to Defendant's motion for summary judgment (or via answers to interrogatories).  "A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'"  Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) and citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance

with Fed. R. Civ. P. 15(a).")).

Moreover, Plaintiff's conclusory assertions regarding black mold in the shower, spoiled food, failure to treat Hepatitis C, fire hazards, and shortened treatment programs, do not show, alone or in combination, that Plaintiff was deprived of "the minimal civilized measure of life's necessities."  Plaintiff presents no facts to suggest that the black mold allegedly identified in the shower (which CCCF staff attempted to remove with bleach), while unpleasant, posed any serious risk to Plaintiff and so its presence cannot support an Eighth Amendment violation.  See Forde v. Fischer, No. 08-5026, 2009 U.S. Dist. LEXIS 118178, at *13-16 (D.N.J. Dec. 16, 2009) (J. Greenaway Jr.) (allegation of mold covering three walls of plaintiff's cell, without facts alleging a substantial risk of harm, not sufficient to state a claim under the Eighth Amendment); Peterkin v. Jeffes, 661 F. Supp. 895, 915 (E.D. Pa. 1987) (finding mold and lime deposits in showers were unpleasant but, given that they posed no real health hazard, there was no constitutional violation), aff'd in part, vacated in part on other grounds, 855 F.2d 1021 (3d Cir. 1988); Shrader v. White, 761 F.2d 975, 984 (4th Cir. 1985) (holding that mold in showers was not constitutional violation, in part, in light of no evidence of disease resulting from mold); Allen v. Malone, No. 08-C-31, 2009 WL 2595615 at *4 (E.D. Wisc. Aug. 20, 2009) (finding mold, poor ventilation, and small bugs in

bathroom area did not establish objectively serious deprivation).

Plaintiff's statements regarding spoiled food are insufficient to support his Eighth Amendment claim. While "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension," Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983), Plaintiff offers no facts to show that he endured such a substantial deprivation. A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities.  There is no evidence showing that CCCF staff frequently served Plaintiff spoiled food, or that a significant portion of his diet consisted of spoiled food.  Without such evidence, Plaintiff cannot establish an Eighth Amendment violation.  See Brown v. Sobina, No. 08-128E, 2009 WL 5173717, at *6-7 (W.D. Pa. Dec. 29, 2009) (plaintiff did not show Eighth Amendment violation regarding spoiled food, where there was no evidence it was a continuing occurrence or that he suffered more than temporary discomfort).

Plaintiff's amorphous assertions regarding fire hazards and poor medical treatment likewise do not show a substantial risk of serious harm to Plaintiff, nor does he claim to have suffered physical injury from these conditions.  It is simply not enough to speculate that the D Block in CCCF is a "fire trap," because there is one way in and one way out, without any additional

12

information regarding the building structure or fire suppression devices. It is similarly inadequate to simply state that Plaintiff went untreated for Hepatitis C, without any evidence that Plaintiff required treatment for Hepatitis C or suffered any consequences due to the lack of treatment. Without more than these conclusory assertions, Plaintiff cannot survive Defendant's motion for summary judgment based on poor medical treatment or insufficient fire protections.

Finally, Plaintiff cannot show any constitutional deprivation due to the shortening of rehabilitative and other treatment programs at CCCF. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981) ("Prisoners have no constitutional right to rehabilitation, education, or jobs").

Of those claims that Plaintiff did raise in his four complaints -- cell conditions and water problems -- the evidence of record does not show that Plaintiff was deprived of life's necessities. The evidence regarding water is simply too sparse to show an Eighth Amendment violation. Plaintiff's legal conclusion that he received an inadequate amount of potable drinking water and his unelaborated references to "dirty water" without any evidence that Plaintiff suffered from dehydration (or other water-related harms) fails to show that CCCF placed him at substantial risk of serious harm. While potable water is certainly one of life's necessities, without any specific facts

13

regarding the quality of the water, the amount of drinking water Plaintiff was provided or the period of deprivation, and the consequences, if any, of poor drinking water, Plaintiff's claim regarding water quality cannot survive summary judgment.

    The evidence regarding the conditions within Plaintiff's cell include a few more details that must be addressed. Plaintiff offers no evidence to dispute Lieutenant Taylor's sworn certification that for the time that Plaintiff was required to sleep on the floor, Plaintiff was given a mattress.  (Def. Exh. B ¶ 3.)  Consequently, the Court must determine whether requiring Plaintiff to sleep on the floor with a mattress for two months "with no heat" with three other men constitutes an Eighth Amendment violation.  The Court finds that two months on the floor with a mattress is not, under Third Circuit precedent, an Eighth Amendment violation, and that absent any more information regarding the temperature in Plaintiff's cell and any other sources of warmth CCCF might have provided, the Court cannot find that Plaintiff has shown a constitutional deprivation due to the conditions of his cell.  In other words, no reasonable jury could find, from the facts presented in opposition to Defendant's motion, that Defendant subjected Plaintiff to unconstitutional conditions in his cell.

    The Third Circuit has recently addressed the practice of practice of requiring inmates to sleep on the floor with a

14

mattress, albeit in a different context.[2]  Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008) ("Hubbard II").  In Hubbard II, the Third Circuit held that requiring pretrial detainees to sleep on a mattress on the floor in a cell holding three inmates for three to seven months did not constitute punishment in violation of the Fourteenth Amendment.  538 F.3d at 234-35.  The court rejected a per se ban on the practice and instead considered it "as part of the 'totality of the circumstances within [the] institution.'"  Id. at 235 (quoting Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir. 2005) ("Hubbard I")[3]).  The court then concluded that although the plaintiffs "did spend a substantial amount of time on floor mattresses," they had access to large day rooms.  Id.  After noting the efforts made by the jail to improve conditions, the court found "that Plaintiffs were not subjected to genuine

---

[2] In several unpublished decisions, the district courts of this circuit have found that temporarily forcing inmates to sleep on the floor with a mattress is not, by itself, enough to run contrary to the protections of the Eighth Amendment.  Renn v. Taylor, No. 99-765-SLR, 2001 WL 657591 (D. Del. 2001); Dickinson v. Taylor, No. 98-695-GMS, 2000 WL 1728363 (D. Del. 2000); Jackson v. Brewington-Carr, No. 97-270-JJF, 1999 WL 27124 (D. Del. 1999); Randall v. City of Philadelphia, No. 86-6300, 1987 WL 14383 (E.D. Pa. 1987); Huttick v. Philadelphia Prison System, No. 86-3714, 1986 WL 10558 (E.D. Pa. 1986).

[3] Hubbard I is the predecessor to Hubbard II.  In Hubbard I the Third Circuit remanded plaintiffs' case to the district court to apply the correct standard for a conditions of confinement claim by a detainee under the Fourteenth Amendment.  399 F.3d at 166-67.  The district court subsequently ruled in defendants' favor and plaintiffs appealed, resulting in Hubbard II.  538 F.3d at 230.

privations and hardship over an extended period of time for purposes of their due process claim." Id.

Though the case at bar implicates the Eighth Amendment and not the Fourteenth Amendment, because a suit under the Eighth Amendment requires proof of greater deprivation than under the Fourteenth Amendment, the Court finds that Hubbard II compels the conclusion that Plaintiff cannot establish a serious deprivation of his most basic human needs.  See Hubbard I, 399 F.3d at 164-65 ("'Pretrial detainees . . . are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.'") (internal citations omitted).  Plaintiff states only that he was required to sleep without a bunk for two months, in contrast to the three to seven months that the Hubbard inmates remained on the floor.  Plaintiff offers no evidence to suggest that he was forced to remain in his cell for unreasonably extended periods of time or that he did not have access to common space.  The record here does not offer facts that sufficiently distinguish Plaintiff's circumstances from those in Hubbard II, and so he cannot show that requiring Plaintiff to sleep on the floor with a mattress with two or three other inmates was an Eighth Amendment violation.[4]  See 538 F.3d at 234-35.

---

[4] On the issue of overcrowding, the only injury that Plaintiff asserts involves this obligation to sleep on the floor. The Court recognizes that housing four inmates in one cell may

16

There is one remaining aspect of Plaintiff's confinement, the absence of heat over a two-month period, to be addressed. Like Plaintiff's other assertions, his complaint regarding heat fails because he has not provided the Court with sufficient information to show that low cell temperatures deprived him of the minimal civilized measure of life's necessities. In <u>Wilson v. Seiter</u>, the Supreme Court noted that while cold cell temperatures alone do not constitute a severe deprivation, the failure of jail staff to ameliorate the cold could amount to an Eighth Amendment violation. The Supreme Court explained:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets.

<u>Wilson</u>, 501 U.S. at 304; <u>see</u> <u>Sampson v. Berks County Prison</u>, 171 F. App'x 382, 384-385 (3d Cir. 2006) ("It is apparent under Wilson that low cell temperatures may satisfy the objective

---

produce a litany of harms -- prolonged confinement without sufficient personal space, inmate-on-inmate violence, spread of disease, poor ventilation -- some or all of which would implicate the Eighth and Fourteenth Amendments.  In the present case, however, because Plaintiff only challenges the requirement that he sleep on the floor with a mattress, a consequence of overcrowding that the Third Circuit directly addressed and rejected under more dire circumstances in <u>Hubbard II</u>, and does not provide any other facts regarding the conditions of his cell (with the exception of the temperature, to be discussed <u>infra</u>) or other harms he might have suffered, the Court does not consider the other possible constitutional implications of overcrowding.

17

deprivation requirement of an Eighth Amendment claim if warranted by the surrounding circumstances."). Plaintiff has offered no evidence, however, of the circumstances surrounding his allegedly cold cell. The Court does not know how cold his cell actually was (Plaintiff offers no details regarding his cell temperature) and whether CCCF staff failed to provide warm clothing or blankets to keep inmates warm despite the colder temperatures. See Dixon v. Godinez, 114 F.3d 640, 643-44 (7th Cir. 1997) (holding that material dispute existed as to whether prison-issue clothing and blankets were sufficient to combat prolonged cold temperatures in cell). Plaintiff presents no evidence from which a reasonable jury could find that the cold cell temperatures were prolonged and intended as opposed to occasional and unintended. Without this evidence, as reasonable factfinder cannot find that Plaintiff has met the objective prong of the Eighth Amendment analysis due to low temperatures in his cell.

In sum, the evidence in the record is insufficient to allow a jury to find that Defendant seriously deprived Plaintiff of a basic human need. Plaintiff's answers to interrogatories and his pre-trial memorandum contain only the sparsest descriptions of the conditions of Plaintiff's confinement at CCCF, theoretically encompassing a wide range of possible deprivations, so that the Court cannot determine what conditions Plaintiff truly endured. Without evidence establishing that Defendant deprived Plaintiff

of "the minimal civilized measure of life's necessities," Plaintiff cannot show that his Eighth Amendment rights were violated.  See Rhodes, 452 U.S. at 347.  His bare assertions and conclusory allegations, therefore, cannot withstand summary judgment.[5]  See Podobnik, 409 F.3d at 594; see also Fed. R. Civ. P. 56(e)(2) (opponent of summary judgment must "set out specific facts showing a genuine issue for trial").

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment.  The accompanying Order will be entered.

**May 14, 2010**          **s/ Jerome B. Simandle**
Date                       JEROME B. SIMANDLE
                           United States District Judge

---

[5] Plaintiff requests an evidentiary hearing in order to prove his Eighth Amendment claims.  Plaintiff, however, must survive summary judgment before he is entitled to a trial on the merits.

19